McFarland, J.,
delivered the opinion of the court.
This bill and cross-bill were - filed for the purpose of correcting mistakes in certain conveyances as to the quantity of lands intended to be embraced.
Previous to the year 1851, . William Champion owned a tract of land in Bradley county, including the South-west quarter of section 34, township 2, ■ range 1, west of the basis-line in the Ocoee district. He sold to James Stead, the North half of this quarter section (eighty acres) and afterward sold him two acres more of the quarter section, making eighty-two acres for which he made the said Stead a deed, and Stead went into possession.
Afterward, Champion sold and conveyed to W. H. Tibbs, three hundred and ninety-two acres, described as follows: “Being all the North-west quarter of section 3, township 3, range 1, West of the basis line, except five acres heretofore sold and conveyed to Joseph Tucker, and one acre to the Baptist Church, also sixteen acres, the North-east quarter of section 3 in the same township and section aforesaid; also seventy-eight acres, being all the South-west quarter of section 34, township 2, range 1, West of the basis *661 line, Ocoee district, except the right of way to the E. T. &. G. E. E. Co.” As before stated, Champion had previously sold to Stead the North half and two acres more of the South-west quarter of section 34, last named, leaving him seventy-eight acres of the South half of said quarter section, in his last deed to Tibbs he describes this as seventy-eight acres, but describes it as' all of said quarter section, whereas it was the half of the quarter section. Tibbs went into possession, and afterward purchased of Stead the eighty-two acres, before mentioned, giving him ■ the whole of this quarter section, but no deed was executed by Stead, only a title-bond to convey upon the payment of the purchase money.
In the year 1864, Stephen Beard brought, in the Circuit Court of Bradley county, his action of trespass against Tibbs and orfe Brown, and in the course of this suit an attachment was levied upon Tibbs’ laud, the sheriff’s levy being copied from the description of the land given in' Champion’s deed as above set forth, except the reservation of one acre to the Baptist Church was omitted. This suit was prosecuted to judgment, the land sold jand purchased by Beard, and a sheriff’s deed made’ to him, following the description, dated December 15, 1866, after this, on February 28, 1867, undqr a compromise agreement Tibbs executed to Beard a quit-claim deed, embracing the same land. Whether the effect of this deed is more extensive than the former ones, is one of the questions in the case, and will be noticed hereafter.
Under the chain of title, the controversy arose, as *662 to whether Beard had title to the eighty-two acres formerly owned by Stead, being the North half of said quarter section 34. On February 28, 1868, Tibbs made a deed for this disputed land to Hard-wick, and caused Stead, who still held the title, to make him a deed also, and Hardwick brought his action of ejectment against Beard who was in possession, and upon his death, the same was revived against his heirs. He also filed this bill upon the ground that his remedy at law was embarrassed by reason of the mistakes in the conveyances, in which it is stated that the seventy-eight acres was the whole, of this quarter section, when in fact, it was less than one-half. . The bill prays that these mistakes be corrected, and that complete relief be granted. Tibbs filed a cross-bill, stating the same facts, and praying for the same relief. The Chancellor’s decree was in favor of the complainants, and the heirs of Beard have' appealed.
We think it very clear that the conveyance from Champion to Tibbs was not intended to include the eighty-two acres. At the time, Champion was not the owner of this, he had previously sold and conveyed it to 'Stead, who was then in possession. It is true, the deed says it is all of this quarter section, but a quarter section is well known to be one hundred and sixty acres, and the deed shows distinctly that in this quarter .section it conveys only seventy-eight acres, being precisely the land he then owned of this quarter section, and this seventy-eight acres with the other land mentioned in the deed made precisely the- *663 three hundred and ninety-two acres called for in the deed.
We think it furthermore clear, that under the- attachment proceedings and sheriff’s deed, Beard acquired no title to the eighty-two acres. The levy of the ¡Attachment and the sheriff’s deed, embrace the same land embraced by Champion’s deed, and besides, had the levy included this eighty-two acres, the sale would have been inoperative, because Tibbs had no legal title. Lane v. Marshall, 1 Heis. So the question depends upon the effect of the quit-claim deed from Tibbs to Beard of February 25, 1867. For Beard’s heirs it is argued, that although no title to these eighty-two acres may have been acquired by the sheriff’s deed; yet the purposi^of this compromise was to include in the quit-claim deed this eighty-two acres, as well as the’ other lands mentioned, while for the complainants it is argued that this.conveyance was not intended to. include this eighty-two acres.
The description in this latter deed, is as follows: “ To-wit, three hundred and , ninety-two acres, more or Jess, being all the North-west quarter of section 3, township 3, range 1, West of the base line, except five acres heretofore sold to Joseph Tucker; also one hundred and sixty acres, more or less, being the North-east quarter of section 3, in the same township, range, etc., as last aforesaid; also seventy-eight acres, more or less, being all of. the South-west quarter of section 34, township 2,s range 1, West of the basis line, except the right of way over said lands *664 belonging to the East Tennessee & Georgia Nail-road Company.”
The deed also embraces forty acres, part of the John Robertson tract. It will be seen that the above description does not materially vary from the description in the Champion deed and the deed of the sheriff. The deed contains this further clause, “ and it is my intention to embrace in the foregoing conveyance all equities which I have in and- to the lands heretofore attached by said Beard, and sold and purchased by the said Beard under the proceedings therein had.”
The question is, did this deed convey these eighty-two acres, which we have said was not embraced in the former conveyances ? There is parol evidence both ways as to the contract of the parties in this respect, but the deed itself, in connection with the previous transactions and the circumstances attending its execution must control. When the draughtsman of the deed came to this part, in which, “the seventy-eight acres, the South-west quarter of section 34,” etc., are mentioned, be made inquiry as to its meaning. The witnesses differ as to what explanation was given him, but he was allowed to proceed, to substantially copy the description of the sheriff's deed or attachment without further explanation.
For the defendants, it is argued that Tibbs should then have explained that he was not conveying the whole of this quarter section as the deed assumes, if in fact, he did not so intend to convey it; on the other hand, if he did intend to convey these eighty-two acres, it is equally strange that the quarter section *665 was ijot described as one hundred and sixty acres instead of seventy-eight, but the draughtsman was allowed to copy from the former deed, in substance describing this as seventy-eight acres, the whole as two hundred and ninety-two acres.' We are of opinion that the eighty-two acres were not intended to be embraced in the conveyance.
But it is objected that the deeds of February, T868, from Tibbs to Hardwick, and from Stead to Hardwick, were void for champerty; that at this date, Beard was in the adverse possession of the land, and such is the proof. Tibbs was however, a non-resident of the State, and under our statute, a non-resident’s deed for land that he owns in this Slate, is not void, unless the same is at the time adversely held by some one under deed, devise or inheritance. Code, 1779. Whitewell v. Martin, 7 Yer., 384, in such case, mere naked adverse possesion will not avoid the deed. In the view we have taken Beard did not hold- under any deed covering the land, and therefore his adverse possession did not avoid the deed. If however, it be conceded that Beard’s possession of the land was of such a character as to render the deeds from Tibbs to Stead and to Hardwick void for champerty; the result would be to defeat Hardwick’s right to recover or dismiss his bill. Yet on the other hand, the establishment of this proposition would show that the relief should be granted to Tibbs. If the deed be void, then it is void absolutely and is no obstacle to granting the relief to Tibbs, who prays the same relief in his cross-bill. Nelson v. Nance, 11 Hum., 189.
*666 We are of opinion that the complainant’s remedy at law was embarrassed, and that the demurrer was properly overruled.
The decree of the Chancellor will be affirmed, the costs of this court will be paid by Beard’s heirs; the costs below, as decreed by the Chancellor.